**Joseph HUTCHISON, Petitioner,**

**v.**

**Melvin CASEY, Warden, Montgomery County Jail, Respondent.**

**No. C–3–80–551.**

United States District Court, S. D. Ohio, W. D.

Jan. 22, 1981.

Thomas A. Schaffer, Richard W. Divine, Dayton, Ohio, for petitioner.

Gary W. Crim, Sp. Asst. Pros. Atty., Dayton, Ohio, for respondent.

## DECISION AND ENTRY DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

RICE, District Judge.

The Petitioner herein seeks a writ of habeas corpus discharging him from the custody of the Respondent, the Warden of the Montgomery County Jail, where he is presently incarcerated awaiting trial upon a State indictment charging him with, *inter alia*, aggravated murder.

The parties have entered into certain stipulations of fact which, although separately stated and made of record in a filing on January 21, 1981, are restated herein as follows:

1. The Petitioner has been in custody since April 10, 1980.

2. The Petitioner was indicted by the Montgomery County Grand Jury on May 27, 1980.

3. Judge Carl D. Kessler, on September 22, 1980, determined, after a hearing, that no cameras would be permitted in the courtroom, Judge Kessler basing his ruling upon a finding, based upon evidence, that the psychological makeup of the Petitioner, coupled with the impact television coverage would have upon him, would deny the Petitioner his Sixth Amendment right to a fair trial, should the broadcasters and other media representatives be allowed to provide electronic and photographic coverage of the trial.

4. The Ohio Supreme Court, on September 30, 1980, as the trial was beginning, issued an alternative writ on the media's suit in prohibition, prohibiting Judge Kessler from proceeding with the Petitioner's trial unless and until television media were permitted to film the trial. Judge Kessler had two choices at that point—first, to do what the Supreme Court ordered, after he had already found that to do so would, in effect, deprive the Petitioner of a fair trial or, second, to abort the trial and wait until the Supreme Court suit in prohibition was finally decided. Judge Kessler chose the latter option.

5. On December 23, 1980, the Supreme Court ruled that Judge Kessler must hold a new hearing on the issue of television coverage, giving television media the opportunity to participate by calling witnesses of their own, cross-examining other witnesses, etc.

6. Such a hearing was held on January 14, 1981. The television media participated. Following said hearing, Judge Kessler affirmed his earlier ruling excluding the media.

7. The trial of the Petitioner upon the indictment returned against him in the Montgomery County Court of Common Pleas is set for January 26, 1981.

8. The within action was filed on December 30, 1980. Subsequent to that date, the Petitioner filed a Motion to Dismiss the State Court proceeding against him alleging, not an independent theory sounding in a constitutional deprivation of his right to a speedy trial, but rather the statutory violation by the State of Ohio of Revised Code Section 2945.71 et seq. (The Ohio Speedy Trial Act). That motion has been overruled. No evidentiary hearing was had.

9. The Petitioner did file a Motion to Dismiss the broadcast media suit seeking a writ of prohibition in the Supreme Court, upon the ground, inter alia, that the media-relators had, by the filing of the suit, deprived the Petitioner of his constitutional right to a fair and speedy trial. No law was stated in support of this theory. Whether this was based upon a federal or state constitutional ground was not stated. In its Decision of December 23, 1980, the Supreme Court made no reference, whatsoever, to this or any other argument advanced by the Petitioner. The Petitioner's Motion to Intervene was never directly acted upon by the Supreme Court, but in its Decision the Petitioner was listed as an intervenor.

The issues before the Court are: first, whether this Court has jurisdiction over the subject matter of this lawsuit and; second, if so, whether the Court should exercise said jurisdiction or abstain from the exercise thereof. Only if both issues are answered in a manner favorable to the Petitioner (i. e., that this Court has jurisdiction and that it should exercise it in this case), would the Court take testimony on the issue of whether, in fact, the Petitioner has been denied his Sixth Amendment right to a speedy trial, as made applicable to the states through the Fourteenth Amendment.

It must be clearly stated, at the outset, that the Petitioner has brought this action seeking Federal habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging a federal constitutional or federal law violation. Such a claim precludes any consideration of the contention that the State of Ohio violated its own Speedy Trial Act (Ohio Revised Code Section 2945.71 et seq.) and leaves for this Court's consideration only the Petitioner's claim for relief under the Sixth Amendment.

Petitioner, ever wary of the delicate balance between Federal and State Court jurisdiction, has made it clear that, although he desires to obtain an impartial forum to hear his speedy trial motion, which, he hopes will result in an order discharging him from custody, he has no desire either to enjoin the State Court proceeding or to derail same. Thus stated, Petitioner seeks to avoid the twin legal roadblocks, enunciated by the Supreme Court of the United States in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ("Federal courts will not enjoin pending state criminal prosecution except under extraordinary circumstances where the danger of irreparable loss is both great and immediate . . ." (syllabus 2), and Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493, 93 S.Ct. 1123, 1128, 35 L.Ed.2d 443 (1973) ("[N]othing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in Federal court."

Petitioner's basic premise is that the doctrine of federal court jurisdiction and abstention are intertwined and that this Court should accept and exercise jurisdiction, because of the extraordinary circumstances of the State Supreme Court's having given standing to a non-party to a criminal case to delay a criminal prosecution to the point where the defendant, the innocent party in the struggle between the trial court and the broadcast media, has been denied, to his prejudice, his Sixth

Amendment right to a fair and speedy trial which cannot be vindicated by his defense against the state action pending against him. The Petitioner further contends that the requirement that he exhaust his state remedies before having recourse to federal habeas corpus relief is inapplicable in the instant action, because he attempted to intervene in the Supreme Court action between the broadcast media and the trial judge (indeed he was listed as an intervenor in the Supreme Court Opinion, although his motion was never directly ruled upon) and filed a motion to dismiss said action in which he set forth before that Court, *inter alia*, the very Sixth Amendment right to a fair and speedy trial argument that he now urges before this Court. Petitioner states that the Supreme Court's failure to rule on his motion, or even to comment upon it in any way in its decision of December 23, 1980, is tantamount to the Court's denial of the motion upon the crucial ground at issue herein. Based upon said conclusion, the Petitioner further contends that, since the highest Court in the Ohio judicial system has spoken, in effect, to the crucial speedy trial issue herein, the Court of Appeals will be unable, by operation of law, to reverse such a ruling upon direct appeal of any conviction had in the trial court, and, in addition, the Supreme Court, itself, would be precedentially or emotionally unable to reverse its prior ruling upon the subject. Thus, says the Petitioner, to require him to exhaust his state remedies, upon conviction, would be the height of futility, since the state courts are already "locked into" a ruling on the issue in question, adverse to his interest.

The Petitioner's basic premise, although well articulated, is incorrect. The Supreme Court of Ohio was under no obligation to rule on any motion filed by the Petitioner, a non-party, directed to a consideration which was not germane to the narrow issue before it (i. e., the right of the broadcast media to notice of the hearing on the question of

trial coverage, together with the right to play a meaningful role at said hearing). In addition, the Ohio Supreme Court has had a longstanding policy of not ruling upon challenges to a prosecution based upon the denial of one's right to a speedy trial, made prior to trial, a defendant being deemed to have an adequate remedy by way of a direct appeal. *In re Singer*, 45 Ohio St.2d 130, 341 N.E.2d 849 (1976) and its antecedents cited therein.[1]

The above factors, plus the additional facts that the speedy trial challenge in the trial court was not filed until *AFTER* the Supreme Court Decision and that such challenge was based upon statutory, as opposed to Sixth Amendment, grounds, leads this Court to conclude that the Supreme Court's silence on the issue of the Defendant's Sixth Amendment right to a speedy trial *cannot* be determined to be a finding on that exact issue adverse to the Petitioner. To rule otherwise, would leave this Court in the position of concluding that the Ohio Supreme Court had changed its long held policy of no "premature review" on the issue of speedy trial, by silence and without any mention whatsoever of such issue which had been brought to it, in vague fashion without reference being made to the Sixth Amendment, by a non-party in a suit directly filed in the Supreme Court, by two persons not parties to the criminal indictment. Such a conclusion on the Court's part, buttressed by this type of reasoning, would surely cause one to fear for the future of common law jurisprudence as practiced in this country.

Petitioner's basic premise has been deemed invalid. As a result, this Court concludes that there is no reason, whatsoever, why the courts of Ohio (trial court, intermediate appellate court and Supreme Court) could not, were the issue of the Defendant's Sixth Amendment right to a fair and speedy trial presented to it and were that claim deemed meritorious, render a decision in Petitioner's favor.

1. These cases dealt with challenges to the criminal prosecution based upon the state's alleged violation of the Speedy Trial Act (Ohio Revised Code Section 2945.71 et seq., and its predecessors). However, the reasoning contained in those cases is equally applicable to a challenge to an indictment based upon Sixth Amendment denial of speedy trial grounds.

Petitioner has failed to exhaust his available state court remedies and has advanced no valid reason, under law, for his failure to do so.

It is, therefore, clear that the Petitioner's suit must founder upon the twin rocks of *Younger* and *Braden, supra. Younger*, a seminal case in the area of federal court-state court jurisdiction, states in part, in syllabus 2 that:

"Federal courts will not enjoin pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable loss is both great and immediate in that ... there is a threat to the plaintiff's federally protected rights that cannot be eliminated by his defense against a single prosecution."

While the circumstances existing in this case are, indeed, extraordinary (a non-party to a criminal action succeeding, without malice, in delaying a criminal trial by some four months, with the concurrence, again without malice, of the State's highest court), the *result* of these extraordinary circumstances places this Petitioner in no different a position than the defendant Harris in the *Younger* case. Harris claimed that he was about to be prosecuted upon a statute that was unconstitutionally defective upon its face. The Supreme Court held, in effect, in language that is equally applicable to the Petitioner herein, that such a threat to his federally protected constitutional rights is not such as cannot be eliminated by his defense to the indictment. In short, absent a showing of bad faith, bias or harassment (none of which is, incidentally, present in the situation before this Court), extraordinary circumstances, *in and of themselves*, do not constitute irreparable loss and are not grounds for a federal court to enjoin a pending state criminal prosecution. See also, *Ex parte Royall*, 117 U.S. 241, 253, 6 S.Ct. 734, 29 L.Ed. 872 (1886), wherein the court stated that federal habeas corpus does not lie, absent "special circumstances" to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction. *Royall* and *Younger*, read together, would require the "special circumstances" to bring about a "special result", the thrust of which would be to threaten a defendant in a pending state criminal prosecution with a denial of a federal constitutional right so grievous that it could not be vindicated by a defense to the indictment and an appeal, if necessary, through the state appellate procedure. Since this Court has concluded that the State Supreme Court has not committed itself upon the issue of the state's alleged denial to the Defendant of his Sixth Amendment right to a fair and speedy trial, there is no reason, under law, why any Ohio court could not, if it deemed the Petitioner's contention to have merit, give said Petitioner the forum to hear the issue which he seeks in this action.

*Braden* stated, *supra* at 493, 93 S.Ct. at 1128, in pertinent part, in its second syllabus:

"The petitioner must, however, [prior to filing a petition for federal habeas corpus alleging a constitutional claim of present denial of a speedy trial, even though the petitioner has not yet been brought to trial on the state charge] have exhausted available state court remedies for consideration of that constitutional claim."

"[N]othing that we have said [ordering the state to try the Defendant within a stated period of time or to dismiss the indictment] would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court."

Although the factual pattern in *Braden* is inapposite the present factual situation (the Petitioner desiring not to litigate a federal defense to a criminal charge, but only to demand enforcement of the state's affirmative constitutional obligation to bring him promptly to trial), the above-quoted language is equally applicable to the situation as presented herein. In short, federal habeas corpus relief, absent special circumstances, producing a "special result" in the federal constitutional sense, cannot be used in the absence of the petitioner's having exhausted available state remedies for consideration of that constitutional claim, in order

to derail a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.

Based upon the aforesaid, this Court concludes that it lacks jurisdiction over the subject matter of the Petitioner's action seeking habeas corpus relief, for the reason that the Petitioner has failed to exhaust available state remedies, and has shown no reason why he should not be required to do so. 28 U.S.C. § 2254(b). Having concluded that it lacks subject matter jurisdiction over the Petitioner's claim pursuant to statute, any question of whether the Court should exercise jurisdiction or abstain from the exercise thereof is moot and will, therefore, not be commented upon.

The petition seeking a writ of habeas corpus is dismissed. Judgment is, accordingly, entered in favor of the Respondent and against the Petitioner herein.

This matter is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.